UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

FRANKLIN LEE,

                          Plaintiff,

        v.

CAROLINE W. COLVIN

Acting Commissioner of Social Security,

                        Defendant.

Case No.: 6:13-CV-00801-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

## *Introduction*

Claimant Franklin Lee ("Claimant") seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 1381-83(f). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

PAGE 1 - FINDINGS AND RECOMMENDATION                              {PGR}

Following a careful review of the record, the court should reverse the Commissioner's decision and remand with instructions to award disability benefits to Claimant.

### Procedural History

Claimant previously applied for SSI benefits in June 1993, November 1996, May 2000, and August 2004. Tr. at 15. On March 29, 2007, an ALJ denied the August 2004 application. *Id.* Claimant did not appeal the decision. Tr. at 17.

Claimant most recently filed for SSI benefits on January 17, 2010, alleging disability beginning October 10, 2009. Tr. at 15. The Commissioner denied the claim initially and upon reconsideration. *Id.* Claimant appeared and testified at a hearing before Administrative Law Judge Mary Kay Rauenzahn (the "ALJ"), who issued a decision finding Claimant was not disabled. Tr. at 15, 27. Claimant timely requested review of the ALJ's decision, but the Appeals Council denied the request, making the ALJ's opinion the Commissioner's final decision. Tr. at 1. Claimant filed for review of the final decision in this court on May 13, 2013.

### Factual Background

Claimant is forty-three years old and lives in Lebanon, Oregon. Tr. at 42. He is not married and currently lives with his mother. *Id.* Claimant was married twice before and has three children who live with their respective mothers. Tr. at 405. Claimant does not appear to have a relationship with his children. Tr. at 405-06. He does not have a driver's license and stated the DMV rescinded it in 2003 after his doctor "put a thing with the DMV to stop [his] license." *Id.* Claimant graduated from high school, where he was enrolled in special education classes for reading and writing. Tr. at 43. He currently receives food stamps and depends on his mother for all other expenses. Tr. at 50.

PAGE 2 - FINDINGS AND RECOMMENDATION                                    {PGR}

Prior to his most recent application for disability benefits, Claimant served an eighteen-month prison sentence for "encouraging child sex" by possessing child pornography on his computer. Tr. at 253. Claimant completed a psychological evaluation while at the Oregon State Correctional Institution ("OSCI") and was diagnosed with schizophrenia-paranoid type, borderline intellectual functioning, and Fetal Alcohol Syndrome (FAS). Tr. at 405-414. The FAS diagnosis was based on Claimant's self-reports of his mother's heavy alcohol use during pregnancy and a FAS diagnosis by a previous doctor. Tr. at 412, 415. In his evaluation, Claimant reported auditory hallucinations, depression, and sleep problems. Tr. at 406. Claimant was granted parole and released from prison in October 2009. Tr. at 52.

Shortly after his release from prison, Claimant completed an intake evaluation with Laura Smith, M.A., at Linn County Mental Health (LCMH). Tr. at 253-67. Smith diagnosed Claimant with schizophrenia–paranoid type and pedophilia. Tr. at 255, 264.

In November 2009, Claimant completed a follow-up comprehensive evaluation with therapist Alice B. Cole, M.S., Q.M.H.P., at LCMH. Tr. at 249-52. Cole diagnosed Claimant with schizoaffective disorder–bipolar type, schizophrenia–paranoid type, pedophilia, and a possible factitious disorder. Tr. at 250.

Currently, Claimant receives ongoing medical treatment from primary care physician Dr. Mary Lou Belozer, M.D. ("Dr. Belozer"). Tr. at 57. Claimant has seen Dr. Belozer since 2010 for various medical complaints, including asthma, gout, and possible gallstones. Tr. at 234-36, 310-21, 331-32, 337. Claimant has not disclosed any psychiatric symptoms to Dr. Belozer. Tr. at 286-307. However, Dr. Belozer noted a diagnosis of paranoid schizophrenia in remission. Tr. at 289.

For mental health treatment, Claimant has seen psychiatrist Dr. Robert Vandiver ("Dr.

Vandiver") since October 2009. Tr. at 240, 269-271. Shortly after Claimant was released from prison, Dr. Vandiver diagnosed him with schizoaffective disorder–bipolar type and ruled out schizophrenia–paranoid type. Tr. at 270. Claimant reported he experiences auditory hallucinations. Tr. at 244, 260, 369. Claimant told Dr. Vandiver he sometimes has difficulty sleeping because of the voices in his head but that he can ignore them at other times. Tr. at 244, 369. Dr. Vandiver prescribed Claimant perphenazine and amitriptyline to address his psychiatric condition, and his diagnosis has remained consistent over time. Tr. at 403.

In February 2012, Dr. Vandiver completed a report at the request of Claimant's counsel in which he concluded Claimant would be unable to sustain employment due to his condition. Tr. at 375. Dr. Vandiver explained that, if placed in a work environment, Claimant would probably decompensate, would be unable to take criticism, and would likely be absent more than twice each month. *Id.* According to Dr. Vandiver, Claimant would need a job that places very little stress and demands on him in order for him to be successful. *Id.*

In addition to Dr. Vandiver, Claimant sees therapist Dena McMillen, formerly Dena Oaks ("McMillen"), on a regular basis at LCMH. Tr. at 39-40, 452-60. Claimant testified that he saw both McMillen and Dr. Vandiver whenever he had appointments at LCMH, at least twice a month. Tr. at 40, 48. McMillen's progress notes indicate Claimant attended group sessions with McMillen to discuss his treatment plan, medication management, and skills training. Tr. at 453, 455-59. McMillen's progress notes also indicate Claimant is doing well with his level of treatment and is "open with his communication." Tr. at 455, 458-59.

McMillen completed Claimant's Medical Source Statement ("Statement") for the SSA where

she noted Claimant has "marked limitations"[1] in several work-related activities. Tr. at 39, 364-66. McMillen marked checkboxes indicating the extent of Claimant's ability to perform certain activities and included handwritten notes identifying the factors supporting McMillen's assessment of those abilities. Tr. at 364.

In the Part 1 of the Statement, McMillen noted Claimant has marked limitations in his ability to (1) understand and remember simple instructions; (2) make judgments on simple work-related decisions; (3) carry out complex instructions; and (4) make judgments on complex work-related decisions. Tr. at 364. McMillen's handwritten notes indicate Claimant is diagnosed and treated for schizophrenia–paranoid type and experiences constant auditory and occasional command hallucinations that interfere with his communication skills. Tr. at 364.

In Part 2 of the Statement, McMillen noted Claimant has marked limitations in "interact[ing] appropriately with supervisor(s)" and "respond[ing] appropriately to usual work situations and to changes in a routine work setting." Tr. at 365. McMillen's handwritten notes indicate Claimant "struggles when a change happens, when he is asked to do simple tasks and gets easily frustrated." Tr. at 365. McMillen's notes also indicate Claimant "struggles to find/use proper words to express his needs" in conversation. Tr. at 365. In Part 3 of the Statement, McMillen added that Claimant "continues to isolate away from social interactions." Tr. at 365.

At the Commissioner's request, Dr. Joshua J. Boyd, Psy.D., also examined Claimant and his medical record. In March 2010,, Dr. Boyd filled out the Psychiatric Review, SSA Form 2506-BK, after examining Claimant. Tr. at 207-224. Dr. Boyd examined Claimant once, during which

---

[1]The Statement defines a "marked limitation" as one in which "[t]here is serious limitation in [the] area" and "[t]here is a substantial loss in the ability to effectively function." Tr. at 364.

Claimant was cooperative, but had fairly vigilant eye contact and a somewhat blunted character. Tr. at 219. Dr. Boyd concluded Claimant has mild restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. Tr. at 217.

In August 2010, Dr. Megan D. Nicoloff, Psy.D., reviewed Claimant's file but did not meet or physically examine Claimant. Tr. at 229. After reviewing the file, including the 2007 non-disability ruling, Dr. Nicoloff concluded Claimant was not disabled. *Id.*

### Summary of the ALJ's Findings

The ALJ engaged in the five-step "sequential evaluation" process when evaluating Claimant's disability as required by 20 C.F.R. § 416.920. As a preliminary matter, the ALJ found Claimant's updated diagnosis of schizoaffective disorder rebutted the presumption of continuing non-disability stemming from the 2007 ruling. Tr. at 17-18.

I.  Steps One and Two

At step one, the ALJ determined Claimant has not engaged in substantial gainful activity since January 17, 2010, the date his application was filed. Tr. at 18.

At step two, the ALJ found Claimant has the following severe impairments: schizoaffective disorder–bipolar type; borderline intellectual functioning to low average IQ; and a cognitive or learning disorder. Tr. at 18. The ALJ noted Claimant also suffers from asthma and gout, but specified there was no indication these disorders cause any functional limitations. Tr. at 18. The ALJ did not address the seriousness or severity of these medical conditions. Tr. at 18.

II. Step Three

At step three, the ALJ determined Claimant does not have an impairment or combination of

PAGE 6 - FINDINGS AND RECOMMENDATION                              {PGR}

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR

Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). Tr. at 18. The

ALJ also found Claimant's impairments did not meet the criteria of Appendix 1 as to severity or

persistence. Tr. at 18. The ALJ concluded Claimant did not show any physical or exertional

limitations. Tr. at 18.

Relying on the opinions of Dr. Boyd and Dr. Nicoloff, the ALJ concluded Claimant has

moderate mental impairments, which do not satisfy the "paragraph B" criteria. Tr. at 18. The ALJ

found Claimant has mild restrictions as to daily living activities and moderate restrictions as to social

functioning, concentration, and persistence or pace. Tr. at 19. The ALJ also determined Claimant

experienced one to two decompensation episodes of extended duration, but failed to establish the

criteria under "paragraph C." Tr. at 19.

## III. Claimant's RFC

The ALJ concluded Claimant has the Residual Functioning Capacity ("RFC") to perform a

full range of work at all exertional levels, subject to a number of non-exertional limitations. Tr. at

19. The non-exertional limitations include: (1) "he can only understand, remember and carry out

simple instructions that can be learned by demonstration"; (2) "there must be little variance in

assigned tasks from day to day"; (3) "he can only have occasional interaction with the public, and

have no work around minors"; (4) "[d]ue to minimal reading and writing skills, he should only work

with objects, and not with data"; and (5) "[h]e should have no exposure to irritants such as fumes,

odors, gasses, dust or airborne chemicals secondary to asthma." Tr. at 19.

## IV. Step Four

At step four, the ALJ determined Claimant has no past relevant work. Tr. at 26. Claimants's

employment records did not reveal any earnings after January 2010. Tr. at 18.

<u>V. Step Five</u>

At step five, the ALJ found Claimant's ability to perform exertional work at all levels is limited by his non-exertional limitations. Tr. at 26. However, the ALJ concluded that when considering Claimant's age, education, work experience, and RFC, Claimant can perform work existing in significant numbers in the national economy. Tr. at 26. She relied on the testimony of vocational expert Carolyn Kay Wise ("Wise") to reach her conclusion. Tr. at 27.

The ALJ's first hypothetical to Wise contained the following non-exertional limitations: (1) "carry out only simple instructions that can be learned by demonstration"; (2) "need to have little variance in assigned tasks from day to day"; (3) "limited interaction with the public and no work around minors"; (4) "work only with objects and not with data or people"; (5) "no exposure to irritants such as fumes, odors, gases, dust, or airborne chemicals secondary to asthma." Tr. at 59. In response to the ALJ's first hypothetical, Wise testified Claimant would be able to work as an automobile detailer, scrap metal sorter, and packer of agricultural produce. Tr. at 26, 57, 60-61. Wise stated each of those jobs exist in significant numbers in the regional and national economy. Tr. at 26.

The second hypothetical contained the following additional limitations: (1) "individual is limited to learning one task a time"; (2) "job would be low stress, meaning no decision-making and no changes in work setting"; (3) "no interaction with the public, limited interaction with coworkers, and isolated with only occasional supervision." Tr. at 61. Adding these limitations, Wise concluded all work would be precluded. Tr. at 61-62. The ALJ also inquired about the effect of having more than two absences a month. Tr. at 62. Wise responded that such absences would not be tolerated

and would result in a warning, probation, or termination in as early as sixty days. Tr. at 62.

The ALJ addressed only Wise's response to the first hypothetical. Accordingly, she found Claimant was not disabled because he was capable of "making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. at 27.

### Standard of Review

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g)(2007); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews v Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The burden of proof to establish a disability rests upon the claimant. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

### Discussion

Claimant raises the following objections to the ALJ's findings and the Commissioner's decision: (1) the ALJ erred in rejecting part of Dr. Vandiver's opinion; (2) the ALJ failed to address the opinion of Claimant's therapist, Dena McMillen; and (3) the Commissioner failed to meet the burden of proving Claimant retained the ability to perform "other work" in the national economy. Each objection is addressed in turn.

PAGE 9 - FINDINGS AND RECOMMENDATION                    {PGR}

I. Dr. Vandiver's Opinion

Claimant first argues the ALJ erred by not fully crediting the medical opinion of the treating psychiatrist, Dr. Vandiver. In response, the Commissioner argues the ALJ properly discounted Dr. Vandiver's opinion by providing a detailed examination of the evidence, which contradicted Dr. Vandiver's own notes.

A treating physician's opinion must be given greatest weight in disability cases. *McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011). However, an ALJ may reject a doctor's opinion if it contradicts the doctor's own observations, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), or if there is a discrepancy with other assessments and observations on the record. *Id.*; *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Nevertheless, an ALJ cannot reject a treating physician's opinion "without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). Furthermore, the opinion of a non-examining physician alone does not constitute substantial evidence to reject the opinion of a treating physician. *Id.* (citing *Pitzer v. Sullivan*, 808 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)). If an ALJ does not provide adequate reasons for rejecting a treating physician's opinion, that opinion must be credited as a "matter of law." *Id.* at 834.

Not all statements by a medical source constitute a medical opinion. Statements by a medical source opining that a claimant is disabled are excluded as medical opinions because the final determination about a claimant's disability is reserved to the Commissioner.[2] 20 C.F.R. §

---

[2] "A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have

404.1527(d)(1). That is, a medical source's conclusory statement that a claimant is "disabled" or "unable to work" does not bind the Commissioner to find the claimant is disabled. *Id.* Nevertheless, statements by a medical source about a claimant's likelihood of being able to sustain employment are not conclusory as defined in 20 C.F.R. § 404.1527(d)(1). *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012). In *Hill*, the court found a physician's statement that the claimant was "unlikely" to work full-time was not conclusory because it was based on objective medical evidence and assessed "[her] *likelihood* of being able to sustain full time employment given the many medical and mental impairments [she] face[d]." *Id.* (emphasis original). The court held it was not harmless error for the ALJ to fail to consider the physician's opinion that the claimant was "unlikely" to work. *Id.*

In this case, the ALJ "substantially discounted" Dr. Vandiver's February and March 2012 reports ("Reports") because, according to the ALJ, his opinion was not supported by the "relevant signs, symptoms, and findings," or "the record as a whole." Tr. at 25. The ALJ explained that the Reports were not reliable because (1) Dr. Vandiver relied on Claimant's "own self-description of his symptomatology," and (2) Dr. Vandiver's other treatment records "fail[ed] to indicate clinical signs of psychoses, mania, or other indicators of the symptoms the claimant alleges he is experiencing." *Id.* The ALJ otherwise accepted Dr. Vandiver's medical opinion. Tr. at 19-26.

The ALJ provided specific and legitimate reasons for rejecting Dr. Vandiver's March 2012 report ("March Report"), but did not provide specific and legitimate reasons for discounting the February 2012 report ("February Report"). Ultimately, the ALJ accepted Claimant has impaired functioning, but disagreed with Dr. Vandiver as to the severity of that impairment. With regard to the March Report, the ALJ primarily discounted Dr. Vandiver's opinion that Claimant "continue[d]

the expertise of one." *McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011).

to experience the psychotic symptoms that are marginally controlled with his medicine." Tr. at 403.

The ALJ pointed to several medical sources, including Dr. Vandiver's own records, to support her conclusion that Claimant's symptoms were overall under control. Tr. at 19-26. The ALJ identified specific references in the record, including the more recent January 23, 2012 visit with Dr. Vandiver, in which Claimant reported he was "doing fairly well" and failed to disclose any new complaints or concerns. Tr. at 368. The ALJ did not err in discounting Dr. Vandiver's conclusion in the March Report that Claimant's symptoms were only "marginally controlled" because the overall record shows his symptoms were under control.

However, the ALJ failed to provide specific and legitimate reasons for discounting Dr. Vandiver's statement in the February Report that Claimant would not be able to function in a work environment. Dr. Vandiver's statement cannot be excluded under 20 C.F.R. § 404.1527(d)(1) as a medical opinion regarding disability. Like in *Hill*, Dr. Vandiver's statement was not conclusory because it addressed the general likelihood of Claimant's ability to sustain work given his condition and the limitations associated with that condition. Dr. Vandiver wrote, "I suspect strongly that given the limitations of his condition, it would not take long for Mr. Lee to essentially decompensate and become rather peculiar in a work environment . . . . I would be very surprised if he could sustain a work routine . . . ." Tr. at 375. There is no indication Dr. Vandiver's statement was based on anything other than the objective evidence in Claimant's medical record, i.e. his diagnosis of schizoaffective disorder–bipolar type.[3] Further, Dr. Vandiver specifically acknowledged Claimant's "simple lifestyle" and stated that "he does not appear to do very much at home," suggesting Claimant

---

[3] The Ninth Circuit has held "disability may be proved by medically-acceptable diagnoses, as well as by objective laboratory findings." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

is currently doing well, in part, because he has few stressors in his life.[4]  *Id.*  Dr. Vandiver took into consideration Claimant's current medical condition and lifestyle to form an opinion about Claimant's ability to sustain work.  As such, Dr. Vandiver's statement in the February Report was not conclusory and should have received the greatest weight in the ALJ's analysis.

The ALJ erred by not considering Dr. Vandiver's opinion about the Claimant's ability to sustain work in two ways.  First, the ALJ failed to specifically and legitimately discount the factors identified by Dr. Vandiver, such as stress or criticism from a supervisor, that could cause the Claimant to decompensate in a work environment.  In fact, the ALJ failed to address those factors at all.  Second, the ALJ relied on Dr. Nicoloff's conclusion that Claimant could sustain work despite his limitations.  Dr. Nicoloff is a reviewing physician who never examined Lee.  The ALJ was allowed to consider Dr. Nicoloff's opinion, but her opinion as a reviewing doctor, by itself, does not constitute substantial evidence.  The ALJ stated, "the conclusions of Dr. Nicoloff and the assessment in the decision of 2007 indicate that the claimant is capable of adequate functioning.  Under the circumstances of this case, the opinion of Dr. Nicoloff regarding the claimant's abilities and limitations is given precedence over that of Dr. Vandiver."  Tr. at 25.  This explanation is not specific or legitimate because it gives greater weight to the reviewing physician's opinion without providing a detailed explanation why that opinion should be favored over the treating physician's opinion.  Because the ALJ failed to provide a legitimate reason for discounting Dr. Vandiver's opinion, the court must fully credit that opinion.

---

[4] Courts have stressed the need for "awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison v. Colvin,* 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir. 2001).

II. Dena McMillen's Opinion

Next, Claimant argues the ALJ erred by failing to address the Medical Source Statement ("Statement") of Dena McMillen, Claimant's counselor. The ALJ did not discuss or mention McMillen's statement in her opinion.

The Commissioner argues the ALJ was justified in rejecting or failing to evaluate McMillen's statement for two reasons. First, the Commissioner claims that because the ALJ considered the medical opinion and records of Dr. Vandiver and LCMH, the ALJ "did not anticipate the additional records would [make] much difference, inasmuch as the two statements were very similar." Def.'s Br. 14. Second, the Commissioner argues the ALJ was not required to address McMillen's Statement because it was neither significant or probative evidence. Alternatively, the Commissioner argues that even if ALJ erred in failing to consider McMillen's records, the error is harmless and does not warrant reversal of the ALJ's opinion.

McMillen is not a licensed physician or any other "medical source" as defined by 20 C.F.R. 416.913(a), and is therefore considered an "other source." 20 C.F.R. 416.913(d); *See also Cole v. Astrue*, 661 F.3d 931, 939, (6th Cir. 2011). Some of the factors an ALJ may consider when assigning weight to "other sources" include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support and opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the opinion. SSR 06-3P, *available at* 2006 WL 2329939, at *4-5 (Aug. 9, 2006). After weighing these factors, an ALJ may expressly reject the opinion of "other sources" if the she provides reasons germane to the

PAGE 14 - FINDINGS AND RECOMMENDATION                           {PGR}

witness for doing so. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

An ALJ must consider non-medical evidence by individuals with knowledge of the claimant's functioning. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974-75 (9th Cir. 2000). Although an ALJ must consider all evidence in the record, she need only include in the narrative discussion a description of how the evidence supports each conclusion. SSR 96-8P, *available at* 1996 WL 374184, at *7. The ALJ need not consider all evidence presented; she must only explain why significant probative evidence[5] was rejected. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Furthermore, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of the Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006).

In this case, the ALJ failed to provide any reason, germane or otherwise, for rejecting the Statement. Instead, the ALJ declined to address the Statement altogether. Without expressly addressing the Statement, the ALJ's reasoning for ultimately rejecting such evidence is unknown.

Nonetheless, the ALJ's failure to address McMillen's Statement was harmless because it was not significant probative evidence. The Statement was a single, unreliable report that was inconsistent with McMillen's progress notes and the rest of Claimant's medical record. First, the

---

[5] Probative evidence is "evidence that tends to prove or disprove a point in issue." BLACK'S LAW DICTIONARY 639 (9th ed. 2009). In *Vincent*, the court found that a controverted medical report was not significant probative evidence because it provided an after-the-fact psychiatric diagnosis, which the court deemed "notoriously unreliable." 739 F.2d at 1395. In addition, the court found lay testimony was not significant probative evidence because it was not "the equivalent of 'medically acceptable . . . diagnostic techniques' that are ordinarily relied upon to establish a disability." *Id.*

Statement indicates Claimant's communication was affected by his hallucinations, yet McMillen's progress notes only indicate Claimant was "open with his communication." Tr. at 458. Second, the Statement also indicates Claimant is diagnosed and treated for schizophrenia–paranoid type, whereas the record shows Dr. Vandiver treated Claimant for schizoaffective disorder–bipolar type, Tr. at 364, 374, 403, and McMillen did not provide an independent diagnosis or treatment plan for Claimant. Third, McMillen noted that Claimant's "paranoid ideation [] affects his ability to distinguish between reality and symptoms" and that he struggles "when a change happens," Tr. at 365-66, but McMillen's progress notes do not specifically mention such difficulties. If McMillen's Statement was based her subjective beliefs and interactions with Claimant, she failed to explain such basis. Therefore, the Statement was unreliable and did not constitute significant probative evidence, and the ALJ's failure to address it was harmless.

III.  Commissioner's Burden

Lastly, Claimant argues that because the ALJ found Claimant has no past relevant work, the burden shifted to the Commissioner to prove he is capable of performing "other work" at a job consistent with his RFC. Claimant believes the Commissioner was unable to meet his burden because the ALJ's hypothetical to the vocational expert did not include all of the limitations supported by the record. Claimant contends that, if properly credited, Dr. Vandiver and McMillen's opinions would demonstrate Claimant could not sustain work. Additionally, Claimant argues the ALJ's hypothetical did not adequately incorporate the Claimant's moderate limitations in concentration, persistence, or pace.

Conversely, the Commissioner argues the ALJ was correct in omitting Dr. Vandiver and McMillen's opinion in the RFC and step five of her analysis because their findings were not

consistent with the medical evidence.  The Commissioner maintains the ALJ's hypothetical questions in step five adequately captured Claimant's restrictions as to concentration, persistence, and pace because they were adequately incorporated into the RFC.

### A. Dr. Vandiver and Dena McMillen's Testimony

The ALJ was not required to address the limitations identified in McMillen's Statement in the hypotheticals to Wise because the ALJ properly discounted the Statement.  However, the ALJ was required to address Dr. Vandiver's opinion as to Claimant's ability to sustain work.

At step five, a vocational expert may testify regarding what jobs the claimant may do and the availability of those jobs in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).  When posing a hypothetical question to the vocational expert, the ALJ must include all of the claimant's impairments in the hypothetical. *Id.* "The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Id.* If an ALJ fails to include one or more of the claimant's limitations, then the hypothetical is incomplete and the vocational expert's testimony holds no evidentiary value. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

In this case, the ALJ asked Wise two hypothetical questions concerning Claimant's limitations, but only relied on the first hypothetical to reach her disability conclusion.  In the second hypothetical, the ALJ included the limitations identified by Dr. Vandiver as to Claimant's ability to perform in a work setting, including his inability to handle stress or criticism and the likelihood of having more than two absences in a month.  In response to the second hypothetical question, Wise concluded none of the jobs identified under the first hypothetical would remain available to Claimant. The ALJ disregarded Wise's response to the second hypothetical and failed to explain her

reasoning for doing so.  The ALJ rendered the hypothetical questions incomplete by limiting Wise's testimony to the first hypothetical.  Therefore, Wise's testimony regarding Claimaint's ability to perform other work, as adopted by the ALJ, holds no evidentiary value.

### B. Concentration, Persistence, and Pace Restrictions

The ALJ also failed to capture Claimant's restrictions as to concentration, persistence, and pace in the Claimant's RFC and the hypothetical questions posed to Wise.  To capture such restrictions, the ALJ's findings must be consistent with the restrictions supported in the medical testimony.  *Compare Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) *with Brink v. Comm'r of the Soc. Sec. Admin*, 343 F. App'x 211, 212 (9th Cir. 2009) (mem.); *see also Lubin v. Comm'r of Soc. Sec.*, 507 F. App'x 709, 712 (9th Cir. 2013) (mem.) (finding the ALJ erred by accepting the claimant had limitations as to concentration, persistence, or pace and then failing to include such limitations in the RFC and the hypothetical questions to the vocational expert)[6].  In *Stubbs-Danielson*, the claimant's physician identified her as having "slow pace, both in thinking & actions," but found she was still able to "carry-out simple tasks as evidenced by her ability to do housework, shopping, work on hobbies, cooking and reading."  539 F.3d at 1173.  The ALJ then "translated" the physician's conclusions regarding the claimant's pace and mental limitations into a restriction to "simple tasks."  *Id.* at 1174.  The court found the ALJ's assessment as to her concentration, persistence, or pace adequately incorporated the claimant's restrictions.  *Id.*

Conversely, in *Brink*, the ALJ accepted the claimant had moderate restrictions as to

---

[6] Although *Brink* and *Lubin* are unpublished decisions by the Ninth Circuit, and therefore do not establish precedent, they are indicative of how the court would rule in a published opinion. *Saucedo v. Colvin*, No. 6:12-CV-02289-AC, 2014 WL 4631225, slip op. at *17 (D. Or. Sept. 15, 2014).

concentration, pace, and persistence, but did not include those specific limitations in her hypothetical to the vocational expert. 343 F. App'x at 212. Instead, the ALJ's hypothetical only referenced a restriction to "simple, repetitive work." *Id.* The court found this restriction did not adequately capture the claimant's restrictions as to concentration, persistence, or pace because the "repetitive, assembly-line work" addressed by the vocational expert still might require "extensive focus and speed." *Id.* The court distinguished this case from *Stubbs-Danielson* because in that case the medical testimony had not established specific restrictions as to concentration, persistence, or pace. *Id.*; *see also Stubbs-Danielson*, 539 F.3d at 1174.

Here, the ALJ failed to properly address Claimant's specific limitations as to concentration, persistence, and pace in the Claimant's RFC and the hypothetical questions posed to Wise. This case is more analogous to *Brink* than to *Stubbs-Danielson*. Like in *Brink*, the ALJ accepted Claimant had moderate restrictions as to concentration, persistence, and pace, but she failed to address these specific restrictions in Claimant's RFC and in her hypothetical questions. Tr. at 19, 59-61. Dr. Boyd specifically noted that Claimant had moderate restrictions as to concentration, persistence, and pace. Tr. at 217, 219. Dr. Boyd explained Claimant "is able to understand, remember, and carry out simple tasks," and "would not be able to sustain attention/concentration for detailed tasks, but could for simple routine tasks. Tr. at 223. The ALJ also acknowledged Claimant has problems with cognitive functioning and completing tasks based on a third-party report from Claimant's mother. Tr. at 24. However, the ALJ's hypothetical questions only inquired about jobs for someone who can "understand, remember, and carry out only simple instructions that can be learned by demonstration" with "little variance in assigned tasks from day to day." The hypothetical questions did not address limitations regarding persistence or pace. Tr. at 59. The ALJ failed to fully capture the Claimant's

limitations because the jobs identified by Wise (auto detailer, scrap metal sorter, and agricultural produce packer) may still require "extensive focus or speed," similar to the repetitive, assembly-line work described in *Brink*.

Thus, the ALJ failed to adequately address Claimant's limitations as to concentration, persistence, and pace in the Claimant's RFC and the hypothetical questions to Wise. As a result, Wise's testimony has no evidentiary value. Since the Commissioner improperly relied on Wise's testimony, the Commissioner did not meet the burden of proving Claimant could perform work available in large numbers in the national economy.

## IV.  Remand to ALJ for Award of Benefits

The ALJ erred by failing to credit part of Dr. Vandiver's opinion and by not addressing Claimant's limitations as to concentration, persistence, or pace. Each of these errors justify reversing the ALJ's finding of non-disability.

In situations where the record is fully developed and there are no outstanding issues to address, a court is permitted to award benefits to avoid unnecessary further administrative proceedings. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Ninth Circuit has "credited evidence and remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence is credited." *Id.*

In this case, the ALJ did not provide specific and legitimate reasons for rejecting Dr. Vandiver's opinion as to the claimant's ability to sustain work and failing to incorporate all of Claimant's limitations into his RFC. There are no outstanding issues to resolve because the ALJ

asked Wise two hypothetical questions that incorporated Dr. Vandiver's opinion, and the second question established Claimant would be unable to sustain work. Wise found Claimant would not be able to work even when not accounting for his limitations as to concentration, persistence, or pace. On this record, the ALJ would be required to find Claimant is disabled. Thus, the court should reverse the ALJ's decision and remand the case with instructions to award benefits to Claimant.

### Conclusion

For the reasons stated, the decision of the Commissioner denying Claimant's application should be REVERSED and REMANDED for an award of benefits.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due December 31, 3014. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 15th day of December, 2014.

JOHN V. ACOSTA
United States Magistrate Judge